**CANTON RAILROAD COMPANY,**
**Third-Party-Plaintiff,**

v.

The **AMERICAN SMELTING AND REFINING COMPANY, INC.,** Third-Party-Defendant.

**Civ. A. No. 71-647-M.**

United States District Court,
D. Maryland.

Jan. 3, 1974.

Milton R. Jones, Norris W. Tingle, Baltimore, Md., for DiCamillo.

Donald C. Allen, Robert L. Ferguson, Jr., Baltimore, Md., for Canton Railroad Co.

Howard Goldberg, Phillips L. Goldsborough, III, Baltimore, Md., for American Smelting & Refining Co., Inc.

## FINDINGS OF FACT

HART, Chief Judge.

1. On September 18, 1970, John J. DiCamillo was employed as a conductor by the Canton Railroad Company. At approximately 6:45 P.M., while performing his duties as a conductor on one of the crews of the Canton Railroad Company at Sidetrack "H" at the American Smelting and Refining Company Baltimore Plant, DiCamillo was killed as a result of being crushed between one of the freight cars and the loading platform adjacent to said Sidetrack "H".

2. At the time of the accident the track at "H" siding was owned by the American Smelting and Refining Company and was governed by a "Sidetrack Agreement" between American Smelting and Refining Company and the Canton Railroad Company, which Agreement was signed and dated March 7, 1950.

3. At the time the accident occurred, a Canton crew was operating the train and thus, the car that killed DiCamillo, and DiCamillo was in charge of the train and crew operating the train by virtue of his position as conductor. In shifting cars on and off "H" Siding, it was necessary for the conductor to see both ends of the train in order to properly control the train. "H" Track curves around the loading platform that is located there and it was necessary, in order to obtain the best view of the track, to stand on the inside of the curve. The clearance between the track and the loading platform at the curve on "H" Siding was so limited that it presented a great danger to a conductor standing at ground level on the inside of the curve while directing the train's movement.

4. At the time of the execution of the Sidetrack Agreement, there existed a loading platform adjacent to "H" Track and at the west end of the loading platform there was a shed, the south side of which was parallel to the straight section of "H" Track which runs east and west. The sides of the shed were open on the rail side for some 227' from the east end of the shed up to the loading platform, except for two 22'-7" bays somewhere in the center of the open section, which were enclosed. In other words, the two bays were closed somewhere in the middle, but the rest of the 227' was open on the rail side.

5. Prior to 1968, it was the practice of conductors of Canton Railroad directing the trains on "H" Siding, to stand on the concrete loading platform at the curve in a place of safety and direct the train movements. This afforded them a view of the entire track east and west and the curved portion of the track around the loading platform. In 1968, Third Party Defendant American Smelting and Refining Company, without notice to Canton, extended the siding on the shed along the loading platform to a point on the curve so that a conductor could no longer stand on the platform and see sufficiently to the east and west to view the track and properly control the shifting of cars on that siding. As a result, conductors

were forced to stand at ground level on the inside of the curve in order to properly direct train movements. This placed the conductor in a position of great peril.

6. Third Party Defendant, American Smelting and Refining Company, knew or should have known of the dangerous condition existing at the curve and of the necessity for a conductor to stand on the platform to direct train movement, if he was to be safe. Third Party Defendant knew or should have known that to extend the shed as they did in 1968 would necessitate the conductor standing at ground level in a very dangerous situation to direct train movements. Under the circumstances, it was negligence for the Third Party Defendant, American Smelting and Refining Company, to extend the siding on the loading platform, and this negligence was a proximate cause of the death of John J. DiCamillo.

7. The decedent, immediately prior to the accident, was standing at a point on the inside of the curve where the least clearance existed between a car moving on the track and the loading platform. He was in a position of great peril. Members of the train crew saw the decedent in this position and saw that he was apparently oblivious to this danger, but they continued to move the train. Under the circumstances, the crew should have stopped the train and their failure to do so constituted negligence and was a proximate cause of the accident.

8. In 1964 the track at "H" Siding was relocated and was done so with the approval of both the Third Party Plaintiff and the Third Party Defendant. The relocation did not increase existing dangers and was not negligence on the part of either party, nor if it had been negligence, would it have been a proximate cause of this accident.

9. Following the death of John J. DiCamillo, his son James R. DiCamillo was appointed Personal Representative of his Estate and brought suit against Canton Railroad Company under the Federal Employers' Liability Act. That suit was settled by Canton Railroad Company for $24,000.00, a General Release was obtained and the $24,000.00 was paid by Midland Insurance Company on behalf of Canton Railroad Company; and Midland Insurance Company was thereafter subrogated to the rights of Canton Railroad Company and the $24,000.00 settlement, which was conceded to be reasonable for the purposes of this action. Prior to settlement, Canton Railroad Company joined American Smelting and Refining Company as a Third Party Defendant in this suit, relying on paragraph 8 of the Sidetrack Agreement, which provides in pertinent part:

"8. LIABILITY

It is understood that the movement of railway locomotives involves some risk of fire, and the Industry assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage to property of the Industry or to property upon its premises, regardless of Railroad Company negligence, arising from fire caused by locomotives operated by the Railroad Company on said side tracks, or in its vicinity, for the purposes of serving said Industry, except to the premises of the Railroad Company and to rolling stock belonging to the Railroad Company or to others, and to shipments in the course of transportation.

The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the personal property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said side tracks; and if any claim or liability, other than from fire, caused by locomotives as aforesaid shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

10. Prior to settlement, American Smelting and Refining Company was advised of the settlement negotiations and was given an opportunity to participate in the negotiations and to pay the full amount or contribute to the settlement but refused to do so.

## CONCLUSIONS OF LAW

1. Since both the Third Party Plaintiff and Third Party Defendant were negligent and since the negligence of each proximately contributed to the death of John J. DiCamillo, the Sidetrack Agreement governs the distribution of the loss.

2. Pursuant to Paragraph 8 of the Sidetrack Agreement both parties are equally responsible for the payment of the settlement to the Estate of John J. DiCamillo.

3. Judgment is therefore entered in favor of the Third Party Plaintiff in the amount of $12,000.00 plus costs.